**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

LINDA SPAULDING

                      Plaintiff,

    - v -                                        Civ. No. 6:02-CV-0779
                                                                         (FJS/RFT)

JO ANNE B. BARNHART, Commissioner of
Social Security,

                      Defendant,

**APPEARANCES:**                                     **OF COUNSEL:**

OFFICE OF STEPHEN J. MASTAITIS, JR.      STEPHEN J. MASTAITIS, JR., ESQ.
Attorney for Plaintiff
1412 Route 9P
Saratoga Springs, New York 12866

HON. GLENN T. SUDDABY                     WILLIAM H. PEASE, ESQ.
United States Attorney for the                      Assistant United States Attorney
Northern District of New York
Attorney for the Defendant
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York 13261

**RANDOLPH F. TREECE**
**UNITED STATES MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**

      In this action, Plaintiff Linda Spaulding moves, pursuant to 42 U.S.C. § 405(g), for review of a decision by the Commissioner of Social Security denying her application for disability insurance benefits and Supplemental Security Income (SSI).[1]  Based upon the following discussion, this Court recommends that the Commissioner's decision denying Social Security benefits be

---

[1] This case has proceeded in accordance with General Order 18 which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs, though oral argument was not heard. Dkt. Nos. 8 & 9. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

**affirmed**.

## I. BACKGROUND

### A. Facts

The facts set forth in Spaulding's Brief under the heading "Statement of Facts" are adopted. Dkt. No. 8 at pp. 3-6; *see also* Dkt. No. p, Dft.'s Brief at p. 3 (incorporating Plaintiff's summary of the medical and other evidence with the exception of any inferences or conclusions asserted therein). Generally, Spaulding alleges a disability due to a obesity, vertigo, hypertension, and neck and back pain. Dkt. No. 7, Admin. Transcript [hereinafter "Tr."] at 22-23, 31, & 92.

### B. Procedural History

On September 9, 2000, Spaulding protectively filed for disability insurance benefits and SSI benifits alleging a disability onset date of August 11, 2000. Tr. at 81-83 & 265-68. Those applications were denied initially.[2] Tr. at 51-55 & 271-75. On December 19, 2001, a hearing was held before Administrative Law Judge (ALJ) Thomas P. Zolezzi (Tr. at 16-49), and on January 25, 2001, the ALJ issued an unfavorable decision against Spaulding (Tr. at 10-15). On April 12, 2002, the Appeals Council concluded that there was no basis under the Regulations to grant Plaintiff's request for review, thus rendering the ALJ's decision the final determination of the Commissioner. Tr. at 3-5. Exhausting all her options for review through the Social Security Administration's tribunals, Plaintiff now brings this appeal.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de*

---

[2] Defendant informs the Court that this case was part of the "Request for Review Elimination ('RRE') project" and thus, the reconsideration stage was eliminated. Dkt. No. 9 at p. 2, n.2.

*novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial evidence is "more than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g). Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

### B. Determination of Disability

The definition of "disabled" is the same for purposes of receiving Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) benefits. To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the claimants physical or mental impairments must be of such severity as to prevent engagement in any

kind of substantial gainful work which exists in the national economy. *Id*. at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. §§ 404.1520 & 416.920. At Step One, the Commissioner "considers whether the claimant is currently engaged in gainful activity." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations. *Id*. at §§ 404.1520(d) & 416.920(d). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience. *Berry v. Schweiker*, 675 F.2d at 467. Where the claimant has such an impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity. *Id*. If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the residual functional capacity (RFC)[3] to perform his or her past relevant work despite the existence of severe impairments. 20 C.F.R. §§ 404.1520(e) & 416.920(e). If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the

---

[3] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a) & 416.945(a).

national economy. *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. §§ 404.1520(f) & 416.920(f).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467. If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id*.; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills. 20 C.F.R. §§ 404.1520(f) & 416.920(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### C. ALJ Zolezzi's Findings

Spaulding was the only witness to testify at the hearing. Tr. at 16-49. In addition to such testimony, the ALJ had Spaulding's medical records consisting of treatment reports and opinions from various treating and/or examining physicians, including, 1) Granville Family Health Center, Max Crossman, M.D.; 2) Rutland Regional Medical Center, Emergency Room, Henry R. Dimuzio, Jr., M.D.; 3) Jogendra Chhabra, M.D., Internist Consultive Examination; 4) Kautilya Puri, M.D., Neurologist Consultive Examination; and 6) J. Stevens, Non-Examining Agency Residual Functional Capacity Assessment. Tr. at 155-263.

The ALJ stated that Spaulding meets the nondisability requirements for a period of disability and Disability Insurance Benefits and is insured for benefits through the date of the decision. Using the five-step disability evaluation, ALJ Zolezzi found that 1) Spaulding had not engaged in any

substantial gainful activity since August 11, 2000, the onset disability date; 2) she has a severe medically determinable impairment, namely, hypertension; 3) her severe impairment did not meet or medically equal any of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4; 4) she has a residual functional capacity to perform light work and can perform her past relevant work as a bank teller and therefore not disabled.  Tr. at 10-15.  After reviewing the administrative transcript, the Court finds that the ALJ applied the correct legal standards and his findings are supported by substantial evidence of record.

### D.  Spaulding's Contentions

Plaintiff's main allegations of error concern the ALJ's finding that she retains the residual functional capacity to perform light work and is able to perform her past work as a bank teller.

### 1.  Residual Functional Capacity

Under Step Four of the disability analysis, the Commissioner assesses a claimant's residual functional capacity (RFC) as a basis for determining the particular types of work the claimant may be able to perform despite the existence of physical and/or mental impairments.  *See* 20 C.F.R. § 404.1545(a); 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(c).  In qualifying work in the national economy, the Regulations classify and define jobs as sedentary, light, medium, heavy, and very heavy.  20 C.F.R. § 404.1567.  If the applicant can still perform the kind of work he or she performed in the past, they are deemed not disabled.  *Id*. at § 404.1520(e).  In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the plaintiff's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe.  *Id*. at § 404.1545(a).

In assessing Spaulding's RFC, the ALJ concluded Spaulding was capable of performing light work as described under 20 C.F.R. § 404.1567(b).[4]  Tr. at 12-14.  Specifically, the ALJ stated that Spaulding retains the residual functional capacity "to sit, stand and walk for six hours each in an eight-hour workday, occasionally lift 20 pounds and frequently lift 10 pounds, and could do unlimited pushing and pulling."  Tr. at 12.  The ALJ then determined that, in light of these limitations, Spaulding could perform her past relevant work as a bank teller.  Tr. at 14.  In making this assessment at Step Four, the ALJ gave full credibility to Spaulding's testimony.  The ALJ also focused on the objective medical evidence and various medical reports indicating that, overall, the claimant did not have limitations greater than stated.  We find that the ALJ's RFC assessment is supported by substantial evidence and no legal errors were committed.  The Court shall recite some of the relevant objective evidence relied upon.

On August 16, 2000, Spaulding was sent to Rutland Regional Medical Center via ambulance from Dr. Max Crossman's office due to extreme hypertension,[5] dizziness, and lightheadedness.  Tr. at 155.  Spaulding reported that her symptoms began five days prior and consisted of dizziness, lightheadedness, nausea, and vomiting.  At Dr. Crossman's office, Spaulding's blood pressure was recorded at 196mmHg/130mmHg.  *Id*.  She was given and inch of Nitro paste to her chest wall;

---

[4] The Social Security Regulations define light work as follows:
Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
20 C.F.R. § 404.1567(b).

[5] Hypertension is defined as "high arterial blood pressure."  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 801 (28th ed. 1994).  "Various criteria for its threshold have been suggested, ranging from 140mm. Hg systolic and 110 mm. Hg diastolic."  *Id*.

when rechecked, her blood pressure fell to 180mmHg/126mmHg. *Id*. Upon examination at Rutland, Spaulding's blood pressure was 184mmHg/126mmHg, which then increased to 220mmHg/110mmHg. Tr. at 156. Spaulding's pupils were observed to be "mid point, equal, round and reactive to light." *Id*. Her lungs were clear. Her heart was "slightly tachycardic[6] without murmurs, rubs, or gallops." *Id*. Spaulding's extremities were full without "clubbing, cyanosis or obvious edema" and she had no calf tenderness or cords. *Id*. Neurologic testing revealed Spaulding was alert and oriented to person, place, and time. Cranial nerves were intact. Finger-to-nose and heel-to-shin alternative movements were normal. Reflexes were two-plus and symmetric in both the upper and lower extremities. Renal and liver functions were normal. Tr. at 156-57. With the application of a second Nitro patch, Spaulding's blood pressure came down to 162mmHg/90mmHg. Tr. at 157. She was prescribed Zestril and Meclizine and instructed to follow up with Dr. Crossman in two days. *Id*. Spaulding continued regular check-ups with Dr. Crossman and other practitioners at Granville Family Health Center. Tr. at 162-96. Eventually, with the aid of medication, Spaulding's condition normalized. Overall, medical records describe Spaulding's hypertension as under "good control." Tr. at 167, 169, & 243. At her hearing, Spaulding testified that her medication did not have any side effects. Tr. at 32-33.

On October 25, 2000, a consultive examination was scheduled with Dr. Jogendra Chhabra, an internist, as part of Spaulding's application for benefits. Tr. 200-04. At that examination, Spaulding's blood pressure was 140mmHg/80mmHg. Tr. at 202. She measured four feet eleven inches in height and weighed 247 pounds. *Id*. Corrected vision was 20/40 in both eyes. Her gait and stance were normal and, according to Dr. Chabbra, Spaulding did not appear to be in any acute

---

[6] A tachycardic heart rate is also classified as a rapid heart rate. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1655 (28th ed. 1994).

distress. *Id*. Spaulding did not use any assistive devices to walk, nor did she require help getting on or off the examination table, rising from her chair, or changing for the exam. *Id*. Head, eyes, ears, and neck examinations were unremarkable. *Id*. Spaulding's chest was normal in diameter and her lungs were clear to auscultation.[7] Tr. at 203. Her heart had regular rhythm and no audible murmurs, gallops, or rubs. *Id*. Musculoskeletal examination revealed "full range of motion in the shoulders, elbows, and wrists bilaterally." *Id*. Strength was 5/5 bilaterally in the upper extremities. *Id*. Spaulding's cervical and thoracic spine were normal. *Id*. Though lumbar testing revealed a slight decrease in movement, straight leg testing, which is designed to test lumbar disc disease, was negative bilaterally. *Id*. Lower extremity strength was 5/5 bilaterally. *Id*. Spaulding's joints were free of any problems and extremities showed no signs of clubbing, cyanosis, edema, or atrophy. *Id*. No motor or sensory deficits were observed. Spaulding demonstrated hand and finger dexterity with a grip strength of 5/5 bilaterally. *Id*. Diagnostic tests revealed an increased cardiac diameter with an unfolded aorta but no active lung disease. Tr. at 204 & 211. Pulmonary testing revealed "mild" respiratory restriction. Tr. at 204 & 212. Dr. Chhabra diagnosed obesity, hypertension, disequalibrium, chronic backache, and status post breast cancer surgery bilaterally.[8] Tr. at 204.

An additional examination was scheduled with Dr. Kautilya Puri, a neurologist. Tr. 214-16. Dr. Puri noted Spaulding's blood pressure was 140mmHg/80mmHg. Tr. at 215. Spaulding did not need any assistive device nor did she require assistance getting on or off the examining table or with changing for the exam. *Id*. Her gait was observed to be normal. *Id*. She had no problems with her

---

[7] Auscultation is "the act of listening for sounds within the body, chiefly for ascertaining the condition of the lungs, heart, pleura, abdomen and other organs, and for the detection of pregnancy. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 161 (28th ed. 1994).

[8] Spaulding had breast cancer surgery in 1978 and 1979. Tr. at 95.

eyes or ears and her neck had "normal range of motion." *Id*. Finger movement was normal and handgrip was full. Tr. at 216. Upper extremity testing revealed reflexes were two-plus and equal, range of motion was normal, muscle strength was 5/5, muscle tone and bulk was normal and no sensory deficits were observed. Tr. at 215-16. Dr. Puri noted reduced lumbar movement, which she attributed to Spaulding's obesity. Tr. at 216. There was no scoliosis, spinal tenderness, nor muscle spasm. *Id*. Straight leg raising was negative bilaterally and her muscle joint examination in both lower extremities was 5/5, with normal bulk and tone. *Id*. Spaulding demonstrated full ranges of motion of the hips, knees, and ankles. *Id*. She displayed no instability nor sensory deficits. Dr. Puri diagnosed back pain and hypertension. *Id*. Dr. Puri opined that there was "no obvious limitation to [Spaulding's] sedentary work lifestyle[.]" *Id*.

The record also contained a functional assessment from the Department of Disability Services. Tr. at 217-24. In consideration of the medical evidence, the reviewer concluded that Spaulding could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and push and/or pull hand and/or foot controls. Tr. at 218. Spaulding had no postural, manipulative, visual, communicative, or environmental limitations. Tr. at 219-21.

At the hearing, Spaulding testified that she lives in a one-story house with her husband. Tr. at 23. Although she stated that climbing more than nine steps causes here some back pain, she further testified that she does not see a doctor for her back problems nor does she take medication for a back impairment. *Id*. She further testified that she can sit, stand, and walk for twenty to thirty minutes, can lift a saucepan, shops, cooks, vacuums, dusts, cleans the bathroom, does laundry, and cares for her personal needs with no difficulty. Tr. at 35-38.

Based upon the claimant's own testimony, which the ALJ gave full credibility to, and upon the medical record, the ALJ determined that Spaulding was capable of performing light work. Based upon the objective medical evidence, there is no indication in the record that the ALJ improperly assessed Plaintiff's RFC, nor does Plaintiff put forward any evidence in support of her conclusory allegation that the ALJ somehow calculated her functional capacity incorrectly despite the fact that such assessment is clearly supported by the opinions of the physicians of record as well as by the objective medical evidence. Therefore, in light of the evidence supporting the ALJ's RFC assessment, and his correct application of legal principles, we find that no error occurred and recommend denying Plaintiff's claim on this basis.

### 2. Past Work

Plaintiff asserts that the ALJ erred in finding she was capable of performing her past work as a bank teller since her own testimony and various doctor's reports clearly showed that she was not able to perform sedentary work of any sort. Dkt. No. 8 at pp. 6-7. Notably, the only medical record Plaintiff cites in support of her claim is to the report of Dr. Chhabra, who, according to Plaintiff, found Spaulding to "have limitations with walking and climbing or descending stairs." *Id*. at p. 7 (citing Tr .at p. 197).

"[I]n order to determine at step four whether a claimant is able to perform her past work, the ALJ must make a specific and substantial inquiry into the relevant physical and mental demands associated with the claimant's past work, and compare these demands to the claimant's residual capabilities." *Kerulo v. Apfel*, 1999 WL 813350, at *8 (S.D.N.Y. Oct. 7, 1999) (citations omitted); *see also* S.S.R. 82-61, 1982 WL 31387, *Titles II and XVI: Past Relevant Work–The Particular Job or the Occupation as Generally Performed* (S.S.A. 1982); S.S.R. 82-62, 1982 WL 31386, *Titles II*

*and XVI: A Disability Claimant's Capacity to do Past Relevant Work, In General* (S.S.A. 1982). Residual Functional Capacity is what a claimant is capable of doing despite his or her impairments. 20 C.F.R. § 404.1545 (a) (2003). Once the demands of the claimant's past relevant work are ascertained, the ALJ must identify the claimant's ability to perform the specific work-related abilities on a function by function basis. Social Security Ruling 96-8p, 1996 WL 374184, at *1, *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims* (S.S.A. 1996).

In accordance with Social Security Ruling 82-62, the ALJ identified the physical demands of Spaulding's past relevant work from Spaulding's own description in her testimony at the hearing. S.S.R. 82-62, 1982 WL 31386, at *3, ("The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work."). Spaulding's past work history included work as a bank teller, drivers' license examiner, independent insurance agent, and telephone psychic. Tr. at 24-27. In describing the demands of her job as a bank teller, Spaulding stated:

> The job entailed a majority of the time was to be sitting down. We could stand if we would like to and the only heavy lifting we had was lifting our cash box which was about, I'm going to say about ten pounds, because we were limited to have not in excess of $10,000 not only in our cash box, but also in our safe at our station as well in coin.

Tr. at 24.

In further response to the ALJ's questions, Spaulding testified that she couldn't perform the job of a telephone operator even though such job did not require any heavy lifting. *Id*. The ALJ found that her job as she described it was consistent with her residual functional capacity. In further support, the Commissioner has provided the Dictionary of Occupational Titles (DOT) description of a bank

teller, at section 211.362-018, as only requiring light strength. Dkt. No. 9 at p. 16; *see also* Dkt. No. 8 at p. 7 (Plaintiff's description of a bank teller's duties as described in the DOT).

We find such assessment to be proper. It is Plaintiff's burden at Step Four to show that she cannot perform her past relevant work. Particularly telling here is Spaulding's response that she cannot work as a bank teller because no one will hire her. Spaulding's inability to find work does not render her unable to perform such work, and it certainly does not mean she is disabled. 20 C.F.R. §§ 404.1566(c) & 416.966(c). Since Spaulding did not meet her burden or proof, the ALJ properly found her not disabled. As such, it was unnecessary for the ALJ to consider other vocation factors. 20 C.F.R. § 404.1560 & 416.960. Accordingly, we find the ALJ did not commit any legal errors in finding Spaulding capable of performing her past work as a bank teller.

### III. CONCLUSION

In light of the foregoing discussion, it is clear that in finding Spaulding was not disabled, the ALJ applied the correct legal standards and his factual findings were supported by substantial evidence. Thus, this Court recommends that decision be upheld.

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the Commissioner's decision denying disability benefits be **AFFIRMED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

**<u>FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE</u>**

**APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

IT IS SO ORDERED

Dated:     February 6, 2006
           Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge